IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS D. HARRIS,

                Plaintiff,                OPINION AND ORDER

    v.

                                          15-cv-397-wmc

BRIAN SCHALLER, GREG HEITZKEY,
CHRIS STEVENS, BRIAN VANLOO,
CHAD FRAPPIER, MARILYN VANTERKINTER,
WARDEN WILLIAM POLLARD, MICHAEL
DELVAUX, WILLIAM SWIEKATOWSKI,
TODD KAZIK, STEVE SCHILLER,
ALAN DEGROOT, MICHAEL RHODES, and
ESTATE OF STEPHANIE SEQUIN,

                Defendants.

---

Plaintiff Thomas D. Harris was granted leave to proceed on a variety of constitutional claims against various correctional officers, nurses and others at Green Bay Correctional Institution. (8/1/17 Op. & Order (dkt. #8).) Before the court are two motions by defendants: (1) a motion by defendants Schaller, Heitzkey, Stevens, Frappier, Vanloo, Rhoades, Delvaux, Swiekatowski, Pollard and Vanterkinter, and joined by the Estate of Sequin, seeking partial judgment as to plaintiffs' claims of excessive force, deliberate indifference and retaliation arising out of incidents that occurred between February and May of 2007, as time-barred (dkt. ##18, 33); and (2) a motion for partial summary judgment for failure to exhaust administrative remedies as to plaintiff's claims for First Amendment retaliation and denial of access to court based on 2013 incidents asserted against defendants Schiller, Kazik and DeGroot (dkt. #20). For the reasons that follow, the court will grant both motions and direct the entry of final judgment.

BACKGROUND

Collectively, these two motions seek judgment in defendants' favor as to all claims asserted by the plaintiff. As noted above, the underlying plaintiff's claims concern two distinct periods of time: (1) a 2007 incident giving rise to his claims for excessive force, denial of medical treatment and retaliation; and (2) 2013 incidents giving rise to his claims for retaliation and denial of access to courts claim. Accordingly, the factual summaries below are similarly divided, with the first derived from plaintiff's pleadings, and the second from the parties' summary judgment submissions, both viewed in a light most favorable to plaintiff

**A. 2007 Incidents**

Plaintiff alleges that he was subjected to excessive force on February 20, 2007. (Compl. (dkt. #1) ¶¶ 1-30.) He filed a grievance about this use of force on March 7, 2007, which was forwarded to the Warden on April 24, 2007, who denied his request for relief. On May 2, 2007 the Warden also informed plaintiff that he was being written up for lying about staff. Plaintiff appealed that conduct report to the Corrections Complaint Examiner, with the final decision issued June 15, 2007. (Pl.'s Opp'n (dkt. #41) 2 (citing Exs. 2-11 (dkt. #41-1)).)

Plaintiff's deliberate indifference claim is asserted against certain defendants for failure to provide medical care for injuries allegedly incurred during the February 20, 2007, use of force. (Compl. (dkt. #1) ¶¶ 35-42.) In his present complaint, he specifically alleges that he suffered from extreme pain due to the denial of medication from February 20 until his last date of pain on May 23, 2007. (*Id.* at ¶ 42.) Plaintiff filed a grievance about the

2

lack of medical care on May 14, 2007; and in his opposition brief in his case, plaintiff represents that the administrative process for matters in his complaint was completed on June 4, 2007. (Pl.'s Opp'n (dkt. #41) 3 (citing Exs. 12-21 (dkt. #41-2).)

As for plaintiff's retaliation claim, plaintiff alleges that the February 20, 2007, physical assault was in retaliation for his threat to file a complaint against defendant Schaller and that the subsequent disciplinary action was in retaliation for his actually filing an inmate grievance about the February 20th attack. (Compl. (dkt. #1) ¶¶ 43-56.) Plaintiff filed his grievance for the retaliation on July 23, 2007, and the administrative process was completed on September 25, 2007. (Pl.'s Opp'n (dkt. #41) 4 (citing Exs. 23, 27-30 (dkt. #41-3)).)

Plaintiff pursued his first lawsuit arising out of the February 20th attack on June 11, 2013.[1] *Harris v. Schaller*, No. 13-cv-408-wmc (W.D. Wis. June 11, 2013). In an order dated July 30, 2013, the court dismissed plaintiff's complaint for failure to pay the initial partial fee payment. *Id.* (dkt. #7). The order also provided "Harris may seek leave to re-open this case *only* if he makes the initial partial filing fee payment of $149.50 within ten days. Otherwise, Harris must re-file his complaint as a new case." *Id.* In his present complaint, plaintiff acknowledges that on August 3, 2013, he received two letters from the district court, one requiring him to pay a partial filing fee of $149.50 by July 12, 2013, and the second dated July 30, 2013, ordering plaintiff's action dismissed for failure to pay the filing fee. (Compl. (dkt. #1) ¶¶ 72-75.)

---

[1] Plaintiff represents that this lawsuit was filed on June 1, 2013. While perhaps signed on that day, the lawsuit was not filed in this court until June 11.

### B. Exhaustion of Claims Concerning 2013 Incidents

As set forth in his complaint as well as in this court's order granting him leave to proceed, plaintiff also alleges retaliation and access to court claims based on certain defendants' taking and failing to return his legal materials. Specifically, plaintiff alleges that on June 18, 2013, he was placed in temporary lock-up ("TLU") and his property, including his legal materials, were packed up and supposedly stored. (Compl. (dkt. #1) ¶ 59.) He was not given his legal materials -- which included the June 11, 2013, complaint filed in this court and the evidence in support of that complaint -- while on TLU status. (*Id.* at ¶ 60.) Plaintiff was transferred from TLU to the general population on August 3, 2013, but his legal materials were not returned. (*Id.* at ¶ 72.) Beginning on August 6, 2013, and continuing into 2015, plaintiff filed a number of inmate complaints and sent letters to DOC officials complaining about destruction of his legal materials and/or seeking their return. (*Id.* at ¶¶ 64-71, 81-99.)

OPINION

## I. Statute of Limitations of Claims Based on 2007 Incident

As for the first motion -- seeking judgment on the pleadings of plaintiffs' claims arising out of the 2007 incident as time-barred -- defendants persuasively argue that plaintiff's claims premised on this incident would have had to have been filed in 2013 to be timely. (*See* Defs.' Br. (dkt. #19) 3 (citing Wis. Stat. § 893.53 (six-year statute of limitations for tort claims); *Wudtke v. Davel*, 128 F.3d 1057, 1061 (7th Cir. 1997) (applying § 893.53 period to § 1983 claims)).) Specifically, with respect to plaintiff's excessive force claim, defendants content that the claim accrued at the time of the force,

February 20, 2007, and, therefore, the deadline for filing the claim was February 20, 2013, six years later.[2] As for the deliberate indifference claim, defendants allege that plaintiff's claim accrued on May 23, 2007, the date plaintiff claims his pain ended, and therefore the deadline for filing that claim lapsed on May 23, 2013. Finally, with respect to the retaliation claim, defendants contend that the claim accrued on May 29, 2007, when he was found guilty for lying about staff, and, therefore, the filing deadline for that claim was May 29, 2013.

Defendants also acknowledge that plaintiff filed a June 2013 lawsuit in this case involving similar claims but point out that that lawsuit did not toll the statute of limitations because Harris's claims were dismissed without prejudice. *See Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000) ("[I]f the suit is dismissed without prejudice, meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing.").

In response, plaintiff argues that: (1) his claims were filed timely in 2013; and (2) the court should find equitable estoppel to toll the statute of limitations for the period between the dismissal of his 2013 lawsuit and the filing of this lawsuit in 2015. In support of his first argument, plaintiff correctly argues that the statute of limitations clock did not start until he had exhausted his administrative remedies for each of the three asserted claims concerning the 2007 incidents. (Pl.'s Opp'n (dkt. #41) 1 (citing *Johnson v. Rivera*,

---

[2] In their brief, defendants misstate the date of the alleged assault as February 7, 2013.

272 F.3d 519, 521-22 (7th Cir. 2001) (holding that the statute of limitations is tolled while a prisoner exhausts his administrative remedies).) As such, the accrual dates defendants identify are too early.

Still, even under plaintiff's account of the administrative process, his deliberate indifference claim would have been time-barred when he filed the 2013 complaint, having exhausted the administrative process on June 4, 2007, and not having filed his complaint until June 11, 2013. This leaves his claims for excessive force and retaliation. As described above, the fact that he filed timely claims in 2013, however, does not render the filing of these same claims in the present lawsuit timely. *See Elmore*, 227 F.3d at 1011. For this, plaintiff argues that the court should apply the doctrines of equitable estoppel or equitable tolling. Equitable tolling does not apply here, however, because there is no argument that plaintiff lacked "vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)) ("[P]laintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant."). Equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Cada*, 920 F.2d at 450–51 (citing *Holmberg*, 327 U.S. at 396-97).

Here, plaintiff contends that the confiscation of his legal materials, including his 2013 complaint and exhibits, warrants equitable estoppel. Perhaps if plaintiff were responding to a motion for summary judgment, this argument may have traction, but with

6

respect to his 2013 lawsuit, he simply needed to pay the initial filing fee. Even if the confiscation of those legal materials excused his prompt payment, he alleges that on August 3, 2013, when released from TLU, he received two letters from the district court demanding payment of the initial filing fee. (Compl. (dkt. #1) ¶¶ 72-75.) In other words, plaintiff alleges that his receipt of those letters occurred during the period of time in which the court provided that plaintiff could pay the filing fee and move to re-open the case. *Harris v. Schaller*, No. 13-cv-408-wmc (W.D. Wis. July 20, 2013) (dkt. #7) (dated July 30, 2013; providing plaintiff until August 9, 2013, to remit payment). Harris did not pay the filing fee and seek to re-open his lawsuit at that time, or at any time, and he provides no explanation for this failure. As such, the court declines to toll the statute of limitations, and the court will grant defendants' motion for judgment on the pleadings as to all claims concerning the 2007 incidents as time-barred.

**II. Exhaustion of Claims based on 2013 Incidents**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a "condition precedent to suit." *Dixon v. Page,* 291 F.3d 485, 488 (7th Cir. 2002); *see also Perez v. Wis. Dep't of Corr.*, 183 F.3d 532, 535 (7th Cir. 1999) (holding that where administrative remedies have not been exhausted, "the district court lacks discretion to resolve the claim on the merits"). Since exhaustion is an affirmative defense, defendants

7

bear the burden of establishing plaintiff's failure to exhaust. *Jones v. Bock,* 549 U.S. 199, 216 (2007).

As for the claims arising out of 2013 incidents, defendants' brief and supporting materials demonstrate that while plaintiff complained repeatedly about his legal materials being confiscated, he did not file any inmate grievances complaining that these materials were confiscated in retaliation for his filing of the 2013 complaint or that defendants' actions hindered his access to courts. *See Turley v. Rednour,* 729 F.3d 645, 650 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to 'alert [] the state' to the problem 'and invit[e] corrective action.'") (quoting *Riccardo v. Rausch,* 375 F.3d 521, 524 (7th Cir. 2004)). Plaintiff concedes in his opposition that he did not file grievances raising a retaliation or access to courts claim. Instead, he argues that the "administrative remedies were made unavailable to him by defendants['] intimidation and threat lodged at Plaintiff." (Pl.'s Opp'n (dkt. #41) 12 (citing *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006)).) In *Kaba*, the Seventh Circuit held that there was a fact issue as to whether the grievance process was available to the prisoner plaintiff who claims that "he was denied forms, intimidated into not pursuing formal grievances, and retaliated against for attempting to pursue administrative relief." *Id.* at 685.

Here, plaintiff contends that he initially believed his legal materials had simply been misplaced. On September 16, 2013, another inmate allegedly informed Harris that he observed Officer Kazik throwing out plaintiff's legal materials. (Harris Aff. (dkt. #42) ¶ 7; *see also* Sanders Decl. (dkt. #41-7) 10-11 (describing him witnessing legal property being discarded into a trash bin on June 18, 2013, though not identifying the property as that

belonging to Harris).) In his brief, plaintiff contends that a few days later, he confronted Schiller about the destruction of his legal materials, and "Schiller told Plaintiff if he files a grievance he will have Plaintiff thrown in segregation and kick his ass again." (Pl.'s Opp'n (dkt. #41) 12; *see also* Harris Aff. (dkt. #42) ¶ 11 (citing Ex. 48 (dkt. #41-7) 13-14 (purported contemporaneous notes detailing exchange with Schiller)).)

Viewed in isolation, perhaps Harris's account of his exchange with Schiller could raise a genuine issue of material fact as to whether he was too intimidated to pursue the grievance process. Even accepting that Schiller made such a threat, however, plaintiff's ongoing use of the grievance process for just that purpose belies any evidence of intimidation. First, on September 30, 2013, plaintiff filed a complaint in which he alleged that the ICE Mohr lied about Schiller's statement that he gave legal materials back to Harris. (Pettru Decl., Ex. 1005 (dkt. #26-6).) Second, in an October 11, 2013, grievance, plaintiff further complained that he never signed a form purportedly completed by Schiller and offered to the ICE to reject Harris's complaints. (*Id.*, Ex. 1006 (dkt. #26-7).) Third, as alleged in his complaint, on October 22, 2013, Harris next wrote to Division of Adult Institutions' Policy Administrator Cathy Jess "that his legal materials had been destroyed, which contained his civil action against several correctional officers and staff at GCBI, and all evidence supporting the suit." (Compl. (dkt. #1) ¶ 81.) Fourth and finally, plaintiff alleges that he wrote to the warden and had further communications with the Division of Adult Institutions about the destruction of his legal materials." (*Id.* at ¶¶ 83-99.)

As evidenced by this record, plaintiff continually used *the grievance process* to complain about the destruction of his legal materials, the very allegation Schiller allegedly

9

threatened him not to make. As such, the court concludes that plaintiff has not raised a genuine issue of material fact as to whether the grievance process was unavailable to him to complain of retaliation and access to courts. The court, therefore, will dismiss the claims asserted against defendants based on the 2013 incidents without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice).

ORDER

IT IS ORDERED that:

1) Defendants' motion for partial judgment on the pleadings (dkt. #18) is GRANTED.

2) Defendants' motion for summary judgment for plaintiff's failure to exhaust administrative remedies (dkt. #20) is GRANTED.

3) Defendant Estate of Stephanie Sequin's motion to join (dkt. #33) is GRANTED.

4) Plaintiff's claims for excessive force, denial of medical treatment and retaliation premised on the 2007 events are DISMISSED WITH PREJUDICE as time-barred.

5) Plaintiff's claims for First Amendment retaliation and denial of access to courts arising out of the 2013 events are DISMISSED WITHOUT PREJUDICE for failure to exhaust.

6) The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 25th of September, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge